UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ALAN BROWN, JENNIFER JORDAN<br>GERARD HINES AND TONYA PARKER | *<br>*<br>*  CIVIL ACTION NO.:  14-813 |
| VERSUS | *<br>* |
| REGIONS INSURANCE, INC.,<br>FFE TRANSPORTATION SERVICES, INC.,<br>AND ROBERT F. BIRD | *  SECTION: J(5)<br>*<br>* |

***************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE**
**TO EXCLUDE TESTIMONY OF LARS REINHART**

NOW INTO COURT, through undersigned counsel, come plaintiffs, Plaintiffs, Alan Brown, Jennifer Jordan, and Gerard Hines, who move this Court for an order excluding the testimony of Dr. Lars Reinhart, a purported biomechanic and injury causation expert hired by Defendants.

**I.      INTRODUCTION**

This litigation arises out of a car collision that occurred on April 30, 2013. Defendant driver, Robert Bird, while driving an eighteen wheeler tractor-trailer down Claiborne Avenue, admittedly did not see the vehicle driven by Alan Brown, whose passengers were Gerard Hines and Jennifer Jordan (Plaintiffs herein), and made an improper lane change, causing a collision between the vehicles.  The investigating officer cited Mr. Bird for causing the accident. As a result of the impact, all three plaintiffs, who were previously in good health, sustained significant injuries and have undergone surgical procedures that their doctors relate to the April 30, 2013 accident.

Defendants propose to introduce the testimony of Dr. Lars Reinhart, who will offer opinions that the biomechanics of the accident are such that the Plaintiffs could not have suffered

1

serious spinal injuries. Dr. Reinhart's opinions with regard to the forces at play in accident are unreliable because they are based upon insufficient facts and data, considering he did not visit the accident scene; inspect either vehicle; talk to any witnesses; or even take into account the actual speed and weight of the vehicles involved in the accident when performing a purported "reconstruction." Instead, incredibly, he bases his opinions regarding forces at play in the impact on (1) studies done with other vehicles under different circumstances, and (2) results of a test that did not recreate the circumstances of this accident.

Additionally, Reinhart's opinions regarding medical causation of Plaintiffs' spinal injuries should be excluded because they will only serve to confuse, not assist the jury. Although admittedly a medical doctor, his training and experience is in emergency medicine, not spine-related health or surgery. Moreover, he did not meet or perform a medical examination on Plaintiffs or review their MRI film studies before rendering opinions regarding the medical causation of their spinal injuries. And, although quick to assert that the forces in *this* impact are not significant enough to cause a disc herniation, Reinhart did not know what minimum force actually *is* required to cause such in injury. Furthermore, as this Court has repeatedly determined, "in cases where there is a simple collision such as there was in this matter, 'the jury can assess credibility and make appropriate factual findings without the aid of any expert testimony.'" *Oaks v. Westfield Ins. Co.,* No. CIV.A. 13-1637, 2014 WL 198161, at *1-2 (E.D. La. Jan. 16, 2014) (quoting *Scineaux v. Empire Fire & Marine Ins. Co.,* No. CIV.A.03-2947, 2005 WL 2050281, at *1 (E.D. La. Aug. 9, 2005)).

Finally, Defendants have also hired a neurosurgeon to perform an independent medical records review on Plaintiffs. Thus, any medical opinions offered by Reinhart will be cumulative of opinions of another expert hired by the Defendants. Accordingly, for these reasons and those

more fully stated herein, Plaintiffs' motion to exclude the testimony of Lars Reinhart should be granted.

## II. LAW AND ARGUMENT

### A. The standard for admissible expert testimony.

Article 702 of the Federal Rules of Civil Procedure provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if

> (l) the testimony is based upon sufficient facts or data,
>
> (2) the testimony is the product of reliable principles and methods, and
>
> (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) the United States Supreme Court offered guidance about whether proposed expert testimony involves "scientific knowledge" by suggesting four "general observations" for the trial court to consider:

> (1) whether the theory or technique that is the subject of the proposed testimony "can be (and has been) tested"; (2) whether the theory or technique "has been subjected to peer review and publication"; (3) a technique's "known or potential rule of error"; and (4) whether there is "general acceptance" of a theory or technique within the relevant scientific community.

*Daubert*, 509 U.S. at 593-94.

Trial courts serve a gate keeping function to keep out expert testimony that is based solely on speculation or unsupported conclusions. *Daubert*, 509 U.S. at 589. Where the testimony's factual basis, data, principles, methods or their application are called sufficiently into

question, the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149. The overarching goal is to ensure that the expert's opinion is based on sufficient data and an appropriate methodology such that the opinion is connected to the facts by more than the conclusory assertions of the expert. *Kumho Tire*, 526 U.S. at 149.

Finally, as the Supreme Court recognized: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. Therefore, in assessing the admissibility of expert testimony, the court must also consider Fed. R. Evid. 403, permitting the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." *See In re Air Disaster at Lockerbie*, 37 F.3d 804, 924 (2d Cir. 1994) (district court may "refuse to entertain expert testimony it thinks unhelpful, cumulative, confusing to the jury or more prejudicial than probative.").

**B.     Reinhart's opinions regarding the force of impact are not based on sufficient facts or scientific analysis and are therefore unreliable.** [1]

Although Reinhart claims to have performed an accident reconstruction in this case, he: (1) was not hired until more than two years after the accident, (2) did not visit the crash scene, (3) did not speak to either driver, any witnesses, or the officer who investigated the crash, and (4) did not inspect either of the vehicles.[2] He further admitted that he did not take into account the weights or speeds of the vehicles at issue in this crash when determining the "Delta V" force

---

1 Dr. Rienhart admitted in his deposition that his testimony had been excluded and limited by Courts in the past. Ex. 1, Deposition of Dr. Reinhart, at 57-62.
   *This deposition was taken on August 8, 2016, the day before the deadline to file Motions in Limine to Exclude Expert Testimony that was extended for the sole purposes of taking this deposition. Accordingly, only a rough draft version of the transcript was available at the time of this filing. Plaintiffs will supplement the record with a final version if it differs from the rough draft in any substantial way.
2 Ex. 1 at 12, 18, 19.

undergone by Plaintiffs in the crash.[3] Considering Reinhart admitted in his deposition that force = mass x acceleration, it is difficult to understand how he claims to have calculated the forces in the impact when he did not even take these baseline variables into account.[4]

Instead, Reinhart bases his opinions regarding the forces in this crash primarily on his interpretation of studies that were previously performed on vehicles that were substantially different than the vehicles involved in this crash and under circumstances entirely different than those in this crash. For example, he relies on vehicle testing performed by "Fittano, et al" to ascertain the "resultant peak vehicle accelerations."[5] Reinhart admits, however, that this testing had variables widely different than those in this impact. For instance, (1) the subject collision was a side-swipe/snagging collision while the collision in the study was a result of a tractor-trailer making a turn into the test vehicle, (2) the test vehicle in the study was stationary whereas the subject collision involved two moving vehicles which were each moving at speeds of approximately 35 mph, and (3) the test vehicle in the study was a sedan whereas the sideswiped vehicle in the subject collision was a large suburban.[6] Reinhart also relies on a study performed by "Merala and White" regarding the average time it takes for an 18-wheeler to change traffic lanes and the accompanying lateral force it would exert when making such a move.[7] Admittedly, however, his force calculations did not account for the evidence in this case that indicated that the 18-wheeler was not performing a simple lane change at the time of the accident but was instead swerving into Plaintiffs' lane of traffic to avoid something near the passenger side of his

---

3 Ex. 1, at p. 18.
4 Ex. 1, at p. 36.
5 Ex. 2, Report, at p. 12; Ex. 1, p. 20.
6 Ex. 1, at p. 20-22.
7 Ex. 2, Report, at 12, Ex. 1, at p. 22.

5

truck.[8] Obviously, a sudden emergency jerking motion would create a lateral force different than a standard lane change, but this was not taken into account by Reinhart.

Reinhart also was present for one test that was performed in a lab in which his associates connected a bumper similar to the one on Plaintiffs' vehicle to a hydraulic apparatus and then moved the bumper backwards until it snagged on a stationary piece of steel, causing damage to the bumper similar to that which occurred in the accident.[9] The test he performed was not a peer-reviewed test.[10] Admittedly this test did not recreate the accident, in that it was not performed at the speeds involved in the accident and it did not account for other forces at play in the accident including the latitudinal force as a result of the sideswipe.[11] Nor did Reinhart's testing or opinions account for that fact that Plaintiffs' vehicle underwent two separate impacts in this crash, the first with the 18-wheeler, and then a second impact when their vehicle jumped an approximately 6-inch curb and came to a rest in the neutral ground.[12] Reinhart also admitted that neither his testing nor his calculations accounted for forces upon the actual occupants of the vehicles (i.e., occupant kinematics) and instead dealt only with the forces upon the vehicles themselves.[13]

Moreover, Dr. Reinhart admitted in his deposition that his force calculations and opinions only account for compression force, which is the downward force exerted on the spine in the crash; he did not calculate the forces of tension, flexion, extension, sheer, tortion, or any others that he agreed would have been exerted upon the plaintiffs' spines in the accident.[14] He also

---

8 Ex 1, at p. 24.
9 Ex. 2, Report, at p. 13; Ex. 1, at p. 32.
10 Ex. 1, at p. 79-80.
11 Ex. 1, at p. 32, 35, 37.
12 Ex. 1, at p. 29.
13 Ex. 1, at p. 25, 34. Reinhart testified that his company was capable of performing testing of the forces on the humans inside the vehicle but did not do so in this case. Id. at 59-60.
14 Ex. 1, at p. 48-54.

6

admitted that he does not know how much force from any of those is required to herniate a disc. [15]

The Fifth Circuit, as well as this Court, have been very critical of such "experts" espousing dubious accident reconstruction and/or biomechanic opinions. In affirming a district court's exclusion of such an expert, the Fifth Circuit stated:

> The [district court] ascertained that [the witness] 1) had never conducted any studies or experiments in the field of accident reconstruction 2) did not take any measurements or collect any data from the accident scene in this case; 3) did not examine the tires or other mechanical parts involved in the accident; 4) based his calculations on publicly accessible data published by the National Highway Transportation Safety Administration; and, 5) was unable to show that his training or experience as a mechanical engineer gave him expertise in the field of accident reconstruction that was distinguishable from training received by other mechanical engineers. Based on all these facts, the court refused to qualify [the witness] as an expert witness and sustained the appellees' objection.

*Wilson v. Woods,* 163 F.3d 935, 937 (5th Cir. 1999).

Your Honor has come to the same conclusion when faced with experts similar to Reinhart. In *Oaks v. Westfield Ins. Co.,* No. CIV.A. 13-1637, 2014 WL 198161, at *1-2 (E.D. La. Jan. 16, 2014), this Court granted Plaintiff's motion in limine to exclude the testimony of Defendants' accident reconstructionist/biomechanical/injury causation expert, holding that the expert's testimony was (a) unreliable, (b) beyond the expert witnesses' expertise, and (c) unhelpful to the trier of fact. The court found that his opinions were based upon insufficient facts and data because he did not inspect the actual vehicles involved in the collision at issue and did not reconstruct the exact accident at issue, instead relying on previous testing on different vehicles. *Id*. at 2. Further, the expert's testing assumed certain facts as to the angle of impact, etc. *Id*.

---

15 *Id.*

In *Scineaux v. Empire Fire & Marine Ins. Co.,* No. CIV.A.03-2947, 2005 WL 2050281, at *1 (E.D. La. Aug. 9, 2005), this Court unilaterally exercised its gate-keeping function to strike four liability experts (one trucking expert, two accident reconstructionists, and one biomechanical expert). The Court found that:

> the proposed 'expert' testimony is not necessary to assist the jury in understanding the evidence or determining any fact in issue. The primary issue in this case will be one of credibility…with regard to the proposed "biomechanical" expert testimony, the court finds that it lacks sufficient reliability because the expert has failed to conduct any testing, has failed to inspect the vehicles involved, has failed to demonstrate that the proposed opinion is based on reasoning or methodology that is scientifically valid, or that it has been peer reviewed.

Similarly, Reinhart's "calculations" are insufficient to qualify as a legitimate expert accident reconstruction, since he did not actually inspect either car or perform calculations related to weights and speeds of the cars that were in the subject accident, instead relying upon previously performed studies with different variables and a bumper test performed under conditions not similar to those of this accident. He also admittedly did not take into account all of the different types of forces at work in the impact. His "conclusions" are therefore suspect, unreliable, and of virtually no legitimate scientific value.

### C. Reinhart's medical causation opinions are based upon insufficient facts and will only serve to confuse, not assist, the trier of fact.

Reinhart is a medical doctor. However, he has never even met, much less medically examined Plaintiffs.[16] He did not review their MRI films, which he admitted he requested and he would have liked to see before rendering his opinions.[17] He is not an expert in spinal conditions or the causation of spinal injuries and has never training in a spinal specialty such as

---

16 Ex. 1, at p. 3.
17 Ex. 1, at p. 2-3.

neurosurgery or orthopedics.[18] Nevertheless, based upon his dubious accident reconstruction/force calculations, he seeks to offer the opinion that the forces in the accident were not significant enough to cause a serious spinal injury. Although quick to opine that the forces in *this* wreck could not herniate a disc, Reinhart could not answer the question of what minimum amount of force *was* required to cause such an injury.[19] Indeed, he even admitted after much probing that it was possible to herniate a disc by simply jerking one's head, and even that a disc can herniate spontaneously.[20] Such admissions are clearly contrary to his overall opinion that this accident could not cause (or exacerbate) Plaintiffs' spinal injuries.

In *Oaks v. Westfield Ins. Co.,* No. CIV.A. 13-1637, 2014 WL 198161, at *1-2 (E.D. La. Jan. 16, 2014), in addition to finding that his conclusions were based upon insufficient data, this Court also found in that case that Dr. Harding's opinions regarding medical causation were dubious because he had not personally examined the Plaintiff. Moreover, the Court added:

> Dr. Harding's opinion will not assist the trier of fact in any way, but rather will likely confuse the jury or cloud its common sense fact-finding role. *See, U.S. v. Wiley,* 57 F.3d 1374, 1389 (5th Cir., 1995) (generally, expert testimony is unhelpful if it supplants the "jury's independent exercise of common sense.") (internal citation omitted). As this Court has previously held when determining the admissibility of expert testimony, in cases where there is a simple collision such as there was in this matter, "[t]he jury can assess credibility and make appropriate factual findings without the aid of any expert testimony ." *Scineaux v. Empire Fire and Marine Ins. Co.,* No. 03–2947, 2005 WL 2050281 *2 (E.D.La., Aug. 9, 2005) (Barbier, J.)

Similarly, Reinhart's opinions regarding injury causation are not based in medicine or science. Although admittedly a medical doctor, he did not examine any of the Plaintiffs and did

---

18 Ex. 1, at p. 6.
19 Ex. 1, at p. 49-50.
20 Ex. 1, at p. 56.

9

not even review the MRI films. His opinions will only serve to confuse the jury and cloud its common sense fact-finding role. For that reason, his testimony should be excluded.

### D. Reinhart's opinions regarding Plaintiffs' medical conditions will be cumulative of the neurosurgeon hired by Defendants in this case.

Dr. Najeeb Thomas, a practicing and well-respected, local neurosurgeon, was hired by the Defendants to perform an independent medical records review of Plaintiffs. While certainly qualified to opine on medical causation, Dr. Thomas's written reports do not contradict the medical causation opinions of Plaintiffs' treating physicians. Reinhart was seemingly hired to give a medical opinion that Defendants' own hired IME doctor would not give. Such cumulative and/or contradictory testimony of Defendants' experts is improper, will cause jury confusion, and should therefore be excluded.

## IV. CONCLUSION

For the foregoing reasons, the Court should follow its own precedent as set forth in the *Oaks* case and exclude the testimony of Lars Reinhart.

Respectfully submitted,

**HUBER, SLACK, THOMAS & MARCELLE, LLP**

*s/Stephen M. Huber*
STEPHEN M. HUBER, BAR NO. 24463
BRIAN P. MARCELLE, BAR NO. 25156
GINA M. PALERMO, BAR NO. 33307
1100 Poydras Street, Suite 2200
New Orleans, LA 70163
Telephone: (504) 274-2500
Facsimile: (504) 910-0838
Stephen@huberslack.com
Bmarcelle @huberslack.com
and

10

                                  **EDWARD J. WOMAC, JR. #02195**
                                  **DOUGLAS J. WOMAC, JR., # 31570**
                                  **EDWARD J. WOMAC, JR. & ASSOC., L.L.C.**
                                  3501 Canal Street
                                  New Orleans, LA 70119
                                  Telephone: (504) 486-9999
                                  Facsimile: (504) 488-4178

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                  *s/Stephen M. Huber*