UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ALAN BROWN, JENNIFER JORDAN,** | * | **CIVIL ACTION NO. 14-813** |
| **GERARD HINES AND TONYA PARKER** | * | |
| **Plaintiffs** | * | |
| **VERSUS** | * | **SECTION 'J'** |
| | * | **HONORABLE CARL J. BARBIER** |
| | * | |
| **REGIONS INSURANCE, INC.** | * | |
| **FFE TRANSPORTATION SERVICES, INC.** | * | **MAGISTRATE DIVISION '5'** |
| **AND ROBERT F. BIRD** | * | **MAGISTRATE MICHAEL NORTH** |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF DR. LARS REINHART

**MAY IT PLEASE THE COURT:**

Defendants, FFE Transportation Services, Inc. and Robert F. Bird, submit this Memorandum in opposition to the Motion in Limine which the plaintiffs have filed in an effort to exclude the testimony of Dr. Lars Reinhart, defendants' medical/biomechanical expert. For the reasons that follow, this Motion is not well-founded and must be denied.

*Facts*

On April 30, 2013, at approximately 8:30 p.m., Robert Bird, an employee of FFE, was operating an 18 wheeler on Claiborne Avenue when he lightly sideswiped a Chevrolet Suburban operated by Alan Brown. Mr. Brown's vehicle contained Jennifer Jordan and Gerard Hines, as well as a fourth occupant. At the time of the alleged impact, both vehicles were travelling at approximately 25-35 m.p.h. Mr. Bird did not know that he had come into contact with the plaintiffs' vehicle, and it was only upon being flagged down that he was informed of the accident.

After the accident, an independent claims adjuster came to the scene of the accident and photographed the van of the 18 wheeler and the plaintiff's Suburban and took measurements of

the areas of contact between the two vehicles. In addition, the accident was investigated by the New Orleans Police Department, who issued an accident report.

All three plaintiffs have, coincidentally, received medical treatment with the same physicians for injuries that they allegedly sustained from this minor, low-speed accident. And, all three plaintiffs had spinal surgeries with Dr. Kenneth Vogel, neurosurgeon. Yet, despite these plaintiffs not seeing Dr. Vogel in follow up for, at least, the last six months, the plaintiffs plan to present testimony at trial that each will need follow-up medical care, ranging from almost $200,000.00 to $1 million.

In order to assist the factfinder in determining whether the plaintiffs could have been injured so severely from such a minor accident, the defendants have retained Dr. Lars Reinhart, a practicing Emergency Room physician, who is also a biomechanical engineer. Dr. Reinhart is certified as an accident reconstruction expert by the prestigious Accreditation Commission for Traffic Accident Reconstruction (ACTAR). (See Exhibit 1 – Curriculum Vitae of Dr. Reinhart). Dr. Reinhart has testified as an accident reconstruction expert on numerous occasions and been so qualified, as demonstrated by his case listing. (See Exhibit 2 – Case Listing for Dr. Reinhart). Dr. Reinhart, by virtue of his education, work experience, and qualifications, is more than qualified to offer informed opinions that will be extremely helpful to the jury. In addition, he has conducted laboratory testing relative to the plaintiff's Suburban which can help the jury to understand the forces necessary to cause damage to the plaintiff's vehicle and any resultant injuries.

The plaintiffs have filed a Motion in Limine challenging the admissibility of the opinions of Dr. Reinhart. However, the Motion omits salient qualifications of Dr. Reinhart and selectively offers deposition testimony of the expert which is allegedly supportive of the plaintiffs' position. A full review of Dr. Reinhart's qualifications, opinions, and testimony, leads to the inescapable

conclusion that this Honorable Court should permit him to testify to the jury. This conclusion is especially true when considering the nature and extent of the injuries and significant, special damages which these plaintiffs are asserting are causally related to this low-impact accident.

### *Argument*

Under Federal Rules of Evidence, Rule 104, preliminary questions concerning the competence or qualifications of a person to be a witness, and the admissibility of evidence, shall be determined by the Court. The qualification and admissibility of proposed expert testimony is governed by Rule 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The standard invoked by this Article is whether the particular specialized knowledge of an expert would "assist the trier of fact to understand the evidence or to determine a fact in issue." See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 579, 592-94, 113 S.Ct. 2786, 2796-97 (1993). Specifically, the analysis under this article turns upon whether or not the testimony of any expert would assist the trier of fact to determine a fact in issue, but as a threshold inquiry, the Court must ascertain whether an expert is qualified to give expert testimony by virtue of his education and work experience, but then, the Court is obliged to determine whether the proposed

expert's theories can be subjected to peer review and corroboration by testing and scrutiny by others in the scientific community. See Daubert, supra.

In Daubert, the Supreme Court instructed trial courts to act as gatekeepers for admissible expert testimony and provided an illustrative list of factors that courts may use when evaluating the reliability of such testimony. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 579, 592-94, 113 S.Ct. 2786, 2796-97 (1993). These factors include (1) whether the expert's theory or technique can be or has been tested, (2) whether it has been subjected to peer review, (3) whether it has a known or potential rate of error or standards controlling its operation, and (4) whether it is generally accepted in the relevant scientific community. Id. at 593-94, 113 S.Ct. at 2796-97.

The proponent of the expert testimony has the burden of proving that the proffered testimony is admissible; however, the proponent need not prove to the judge that the expert's testimony is correct. Moore v. Ashland Chem., Inc., 151 F.3d 269, 276 (5th Cir. 1998). There exist several traditional and appropriate means for attacking "shaky but admissible evidence," including "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." Daubert, 509 U.S. at 596. Furthermore, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009). Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."

The admission of expert testimony is proper only if all three of the following things are true: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of

fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Cheairs v. State ex rel. Dep't of Transp. & Dev., 2003-0680 (La. 12/3/03), 861 So. 2d 536, 542, on reh'g in part (Jan. 16, 2004). Dr. Reinhart clearly meets these three criteria for the admissibility of his opinions.

1. **Dr. Reinhart is qualified to testify as to causation of plaintiffs' injuries and his opinions are reliable**.

An expert is one who, usually by education or experience, has unique knowledge of subject matter at issue, and he or she is permitted to express personal opinions. Barrett v. T.L. James & Co., 671 So.2d 1186 (La. App. 2nd Cir. 1996), writ denied, 674 So.2d 973 (La. 1996). To determine whether a witness is an expert, the trial court should be guided by two primary concerns; whether the witness plans to testify to actual technical knowledge and whether such knowledge will assist the trier of fact's understanding or determining a fact at issue. Pelts & Skins Export, Ltd. v. State ex rel. Dept. of Wildlife and Fisheries, 735 So.2d 116 (La. App. 1st Cir. 1999), writ denied, 748 So.2d 1167 (La. 1999), writ denied, 748 So.2d 1168 (La. 1999), reconsideration denied, 751 So.2d 860 (La. 1999).

Dr. Reinhart is qualified as an expert by "knowledge, skill, experience, training, or education" as required by Rule 702. He possesses a Doctor of Medicine degree from The University of Texas, Southwestern. He has almost twenty years years of experience in emergency medicine, and perhaps more importantly to the inquiry before the Court, *he continues to practice in the field of emergency medicine to this day*. Dr. Reinhart explained in his deposition that, while he may not be a neurosurgeon or an orthopedic surgeon, he is on the front line in assessing and treating the spinal injuries that these specialists later treat. (Deposition of Dr. Reinhart, pages 73-75). His education, training, and experience in emergency medicine also include the recognition,

correct diagnosis, accurate investigation, and initial treatment of all forms of trauma, including orthopedic and neurological trauma.

On that score alone, it is hard to conceive of how the plaintiffs in this case could assert that Dr. Reinhart is not qualified as an expert to render medical causation opinions. Dr. Reinhart has done just that, in the context of a trauma unit in an emergency room involving patients involved in automobile accidents and who have suffered spinal injuries of the neck and back. Thus, Dr. Reinhart is just as qualified to render expert opinions as any physician who has treated the plaintiff.

The mere fact that Dr. Reinhart has not examined the plaintiffs is irrelevant and goes to the weight of his testimony. Many times, independent medical examiners are called upon to render opinions on medical records alone, without an actual examination of the plaintiff, but those medical experts are not rendered incapable of testifying by that alone. (Deposition of Dr. Reinhart, pages 75-76). Thus, Dr. Reinhart must be allowed to testify.

Plaintiffs mistakenly argue that Dr. Reinhart is not qualified to testify as to the causation of plaintiffs' injuries. However, this is not the purpose of a Daubert hearing. In Cleland v. City of Lake Charles, the defendants offered a biomechanical engineer who was to testify as to the mechanics of injury as a result of an automobile accident. Although the Court of Appeal ultimately held that the defendants had not made the requisite showing as to this expert's ability to testify in the area offered, the Court of Appeal did implicitly recognize the viability of this type of testimony, and more importantly, the proper application of Daubert to a biomechanical engineer's ability to testify as an expert:

> Although at the outset the trial judge termed the hearing involving Dr. Krenrich a *Daubert* hearing, a thorough reading of the transcript of that hearing reveals that in fact it was not a *Daubert* hearing. In essence, the hearing merely questioned the proposed expert's qualifications as an expert in his particular fields as opposed to the scientific validity of the methodology underlying his opinion in the case. Moreover, the trial judge admonished plaintiff's counsel that the issue at the hearing was whether Dr. Krenrich

"possess[ed] the qualifications to give opinions." **An expert's qualifications to give an opinion are *not* the purpose of a *Daubert* hearing.** Cleland v. City of Lake Charles, 840 So.2d 686, 695-96 (La. App. 3rd Cir. 2003), writ denied, 853 So. 2d 644 (La. 2003), writ denied, 853 So.2d 645 (La. 2003) (emphasis added). In Cleland, expert testimony was to be based on biomechanical and "Newtonian" physics theories. The Court implicitly recognized the viability of such an expert and the reliability of biomechanics and/or Newtonian physics in vehicle collisions and the effects on the occupants of those vehicles.

Plaintiffs do not challenge the methodology utilized by Dr. Reinhart, which is what Daubert directs is the correct inquiry in deciding whether to allow an expert to testify. The focus of a Daubert inquiry is whether the expert's opinions that he proposes to offer are subject to peer review in the scientific community and are generally accepted as falling within the scientific disciplines. Daubert calls upon trial courts to perform a gatekeeping function by deciding whether the expert's scientific evidence or testimony is both reliable and relevant. Id. at 694. Both can be said of Dr. Reinhart's opinions in this case. He even explained that the opinions he has reached in this case are founded upon the laws of physics as well as numerous peer-reviewed articles. The plaintiffs take issue with Dr. Reinhart's reliance upon peer-reviewed articles to reach his conclusions in this case, but as Dr. Reinhart explained in detail, while the studies may not involve the exact fact pattern presented by this case, those studies do involve the application of Newtonian physics and are useful in assessing the causation in this case.

In reaching his opinions, Dr. Reinhart also reviewed accident reports, images of the vehicles, repair estimates, various pleadings, depositions, and medical records. He further conducted destructive testing, which is widely used to investigate impact scenarios and to reach his ultimate conclusions.

A simple review of Dr. Reinhart's report reveals that the same vehicle equipment was used in a laboratory setting to ascertain the force of impact and causal effects on the plaintiffs from that testing. The results from this testing can be used to explain to the jury the amount of forces required to cause injury to the plaintiffs while they occupied the Suburban.

Dr. Reinhart's report evidences that the theories and methods he employed are generally accepted in the medical community. Moreover, the theory and techniques of injury causation analysis (ICA) are longstanding and have been and are subject to extensive peer review and publication. Furthermore, acceptance of the theory and techniques used by Dr. Reinhart exists in the scientific community and practical application of these theories and techniques has been undertaken by government agencies including the Department of Defense, the Federal Aviation Administration (FAA), the National Transportation Safety Board (NTSB), the Centers for Disease Control and Prevention (CDC), Occupational Safety and Health Administration (OSHA) and the National Highway Traffic Safety Administration (NHTSA) of the Department of Transportation. Dr. Reinhart applied these theories to the facts of the case, which will assist the jury in determining the cause of plaintiffs' injuries.

The plaintiffs also misrepresent to the Court that Dr. Reinhart "did not visit the accident scene," "inspect either vehicle," "speak with the witnesses," or "take into account the actual speed and weight of the vehicles." All of these assertions by the plaintiffs are either incorrect or misleading.

Dr. Reinhart may not have visited the scene of the accident in connection with this case, but on questioning by plaintiffs' counsel, he explained that he is familiar with the area from having traversed it in the past. In addition, he explained that he was able to view the scene from Google

Earth to assist in orienting himself as to the path of the vehicles at the time of the accident. Thus, to state that Dr. Reinhart did not "visit" the accident scene is simply not true.

In addition, while Dr. Reinhart did not inspect the 18 wheeler operated by Mr. Bird or the Suburban operated by Alan Brown, he examined the photos of the vehicles taken at the scene of the accident, in order to reach his conclusions. ***These photos are detailed and even included measurements of the respective damage that each vehicle sustained from the low-impact sideswipe collision***. These photos offered adequate information to Dr. Reinhart so that he could reach his conclusions and perform the destructive testing that he accomplished in this case. Thus, while Dr. Reinhart did not inspect the vehicles in person, the photos provided the same information that a physical inspection would have yielded.

The plaintiffs next contend that Dr. Reinhart did not "speak to the witnesses." While that may be the only accurate assertion made by the plaintiffs in their Motion, the fact of the matter is that Dr. Reinhart had multiple accounts of the accident available to him in the form of the police report, the histories related by each plaintiff to the treating physicians, and more importantly, the sworn deposition testimony of each plaintiff and the driver – Alan Brown, as well as the driver of the defendant vehicle, Mr. Bird. These accounts are detailed and adequate so that a "face to face" with the plaintiffs and Mr. Bird would not be of any use, putting aside the fact that the plaintiffs' attorneys would probably not permit a defense expert to interview their clients.

The plaintiffs also complain that Dr. Reinhart's opinions are not based upon the speed of the vehicles; however, this is simply not true. In this case, both the defendant and plaintiff estimated the speed of their vehicles in their sworn deposition testimony. Robert Bird testified that he was travelling at between 25 and 30 m.p.h, while Alan Brown testified that he was travelling at 35 m.p.h. Dr. Reinhart considered this data as a part of his opinions, and contrary to the

representations of the plaintiffs, he was also aware of the relative weight of each of the vehicles. (See Dr. Reinhart's Report, pages 3-5).

In connection with his opinions in this case, Dr. Reinhart performed destructive testing in a laboratory setting using a Suburban bumper similar to that on the plaintiffs' vehicle. The point of this test was to determine the amount of forces that would be needed to rip the bumper from its mounts, as was purportedly done in the subject accident. Dr. Reinhart was able to generate forces of almost 3,800 pounds that would translate to a G force exerted on the occupants of about 1.7 g. Dr. Reinhart can explain to the jury similar forces that human bodies experience and relate to the jury that these forces are not sufficient to cause the types of injuries allegedly suffered by the plaintiffs in this case.

Dr. Reinhart's partner, Dr. Ted Bain, faced similar challenges to his opinions in a recent decision rendered by Judge Jay Zainey. Burgo v. Davis, No. CV 15-2430, 2016 WL 3257589 (E.D. La. June 14, 2016). That case, like this one, involved an automobile collision, and the plaintiff in Burgo made the same complaints about Dr. Bain's opinions as are made here – he did not inspect the vehicles, did not speak with the plaintiff, did not examine the plaintiff in person. Judge Zainey found that the biomechanical expert was qualified to testify as an expert, as defined by Daubert. In findings that are equally applicable here, Judge Zainey held:

> In the case of Dr. Bain, it is rather clear—even in light of Wilson—that Dr. Bain is an expert in accident reconstruction. Unlike the expert in Wilson, Dr. Bain is registered with "The Accreditation Commission for Traffic Accident Reconstruction" and has taught and published in the field. See Rec. Doc. 33-8 at 20–24. While Dr. Bain did not personally inspect the crash site and cannot satisfy each and every factor cited in Wilson, the Court is satisfied that Dr. Bain has clearly spelled out his qualifications and methodology in order for him to properly opine on the nature of the collision in this case.

Burgo v. Davis, No. CV 15-2430, 2016 WL 3257589, at *4 (E.D. La. June 14, 2016).

Additionally, the plaintiff there asserted that the expert's testimony would be cumulative with an independent medical examiner (IME), and should be excluded on that basis. However,

Judge Zainey found that there was an appreciable difference in the testimony of the biomechanical expert and the IME to warrant allowing Dr. Bain to testify. In this case, while Dr. Najeeb Thomas did perform IME's for the defendants, his opinions relate more to the degenerative changes present in the plaintiff's spines, as opposed to the opinions of Dr. Reinhart that the accident impact was insufficient to cause the plaintiff's injuries at all.

Dr. Reinhart reviewed all of the available factual data and performed recreative testing; based upon the facts known to him and the results of his testing, Dr. Reinhart concluded that the forces exerted on the plaintiffs were not adequate to cause more than minor, soft tissue injuries. He reached these opinions using the Newtonian laws of physics, and it cannot be gainsaid that these scientific principles have withstood the test of time and the scrutiny of the scientific community. No common juror can appreciate these scientific theories without the assistance of an expert such as Dr. Reinhart. His methodology and principles are scientifically sound and based on facts sufficient to satisfy Rule 702's reliability requirement.  Thus, plaintiffs' Daubert Motion must be denied.

The plaintiffs complain that Dr. Reinhart cannot quantify the minimum force required for a human being to sustain a rupture of a herniated disc. The plaintiffs ridicule Dr. Reinhart for this banal proposition. Yet, Dr. Reinhart repeatedly explained in deposition testimony that this simple proposition is not so simple and that the answer must be considered in the context of many other factual variables.

The plaintiffs' reliance on this Honorable Court's prior decision in Oaks v. Westfield Ins. Co., No. CIV.A. 13-1637, 2014 WL 198161 (E.D. La. Jan. 16, 2014) is grossly misplaced. That case involved a "simple" rear-end collision, and the expert at issue in Oaks, was not a physician

who had practice medicine in quite some time. As this Court recognized about the proposed expert in that case:

> He has not practiced clinical medicine in over a decade, and he has never been licensed to practice medicine in the United States. Although he was at one time licensed to practice medicine in the United Kingdom, he has since lost his license due to inactivity. *See* Thomas v. G & K Servs. Co., et al., No. 01–1637, 2002 WL 34720493 *3 (E.D.La., Aug. 16, 2002) (Lemmon, J.). Moreover, Dr. Harding's "accident reconstruction" certification is irrelevant because his report does not reconstruct the exact accident at issue. Rather, he either re-created a loosely similar accident or relied on prior testing that presented an allegedly similar scenario.

Oaks v. Westfield Ins. Co., No. CIV.A. 13-1637, 2014 WL 198161, at *2 (E.D. La. Jan. 16, 2014).

However, as previously noted, Dr. Reinhart is a practicing physician, who practices in an Emergency Room and has done so since his completion of medical school. In addition, he did not perform "loosely similar" accident reconstruction in this case, but rather, performed a relevant test to determine the amount of G forces to which the occupants of the plaintiffs' vehicle would have been subjected. This information and the opinions of Dr. Reinhart will help the jury to understand the issues in the case, unlike the proposed expert in Oaks.

**2. The field of biomechanics meets the Daubert inquiries in Louisiana courts.**

Courts in Louisiana have previously recognized that the field of biomechanics clearly falls within the scope of acceptable testimony, in accordance with Daubert. In Fussell v. Roadrunner Towing & Recovery, Inc., 765 So. 2d 373, 377 (La. App. 1st Cir. 2000), writ denied, 765 So. 2d 1042 (La. 2000), the defendant was precluded from using a biomechanical engineer, similar to Dr. Reinhart, by the trial court, who felt that "the force of the impact 'may be' relevant. Notwithstanding that belief, the court found that Dr. Harris's opinion would not assist the jury and would be confusing. Dr. Harris's testimony was excluded [and] the defendants proffered Dr.

Harris's report." The Court of Appeal reversed, though, and held that the expert should have been allowed to testify:

> The report's conclusions on injury possibilities are based on the initial findings using standard mathematical formulas for calculation of speed, rate of acceleration, and force of impact. Additionally, we note that the injury conclusions were drawn from studies published in scientific and professional journals, which were not challenged. However, the analysis section of the report did not reference the specific facts underlying the reasoning and the conclusions. The analysis did not provide the calculations used. These omissions may have led the trial court to confuse the weight to be given the opinion with the issue of admissibility under Code of Evidence 702. Any alleged failure to visit the scene or supply specific facts in the analysis or conclusion provides a basis for attack by plaintiffs' cross-examination. Under the particular facts here, the failures alleged do not require exclusion under the Daubert and Foret guidelines for reliability. Id. at 377.

Furthermore, several courts have demonstrated a very good grasp of what type of expert will not meet the Daubert inquiries. In State v. Lamonica, 44 So.3d 895 (La. App. 1st Cir. 2010), the trial court did not allow an expert to testify pursuant to a Daubert hearing. The prosecutor challenged the legitimacy of the science of false confessions and influence of high-control groups. At the conclusion of the Daubert hearing, the trial court ruled that Dr. Ofshe's testimony was inadmissible, stating:

> First of all, Dr. Ofshe, I do believe that you are an expert in the field. I believe that this is a new field. The problem that I have with it is I don't know how it aids the jury. The jury has heard testimony, not only—not from Mr. Lamonica, but from [M.L.] and [S.L.] They have heard Mr. Lamonica's allegations that he suffered a deprivation of freedom, that he was forced to wear a dress, and snakes, and they were chanting, that people ostracized him, gave him a new name, he had forced labor at a bunch of these companies for ten dollars ... a week. And if the jury believes these allegations, if they believe that those are true, then, certainly they wouldn't question whether or not the confession is false or not. They could, on their own, figure that if a person was truly subjected to this type of stress and this treatment, then, certainly they would do whatever it was they could do to get themselves out of it. As far as are there false confessions, I don't think there's anybody that believes that there are not false confessions. The example that you gave about false confessions given by persons with feelings of grandiosity, they want to make themselves-the notoriety, they want to make themselves

get their fifteen minutes of fame, or whatever, I think that's true, too. I think that's very true. But I don't think that that's something that they need an expert to tell them. And if I'm wrong, I'm wrong. But I have to do what I think is right. Therefore, I'm going to exclude your testimony.

There, the trial court clearly appreciated the distinction between the "junk science" that Daubert sought to curtail and the real science about which an expert such as Dr. Reinhart opines. Thus, the plaintiffs' efforts to implicitly deem Dr. Reinhart's opinions as "junk science" is misguided and not made in the context of what expert opinions merit exclusion.

Much like the expert in the Fussell case, Dr. Reinhart should be allowed to testify in this case. While liability in this case is not seriously contested by the parties, the medical causation from such a minor collision is a critical issue to be determined by the factfinder. While the plaintiffs and the defendants will offer countervailing medical opinions on causation, the medical experts are simply not qualified to analyze the force of the impact in this case and determine whether a low-impact collision can produce enough force to result in the injuries of which the plaintiff complains. Dr. Reinhart will explain his opinions, much like the expert in Cleland, using the principles of physics, which the common juror will certainly not comprehend without the assistance of an expert. Thus, the defendants are entitled to present this testimony pursuant to Daubert and its progeny. Simply because the plaintiffs do not like or agree with Dr. Reinhart's opinions does not dictate his exclusion as an expert witness pursuant to Daubert.

### *Conclusion*

In light of the foregoing, this Honorable Court must deny the plaintiffs' Motion in Limine. The mere fact that the plaintiffs do not like the opinions of Dr. Reinhart are certainly not grounds for excluding him as a witness. Dr. Reinhart is imminently qualified, and plaintiffs have made no compelling arguments in favor of the granting of this Motion.

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company


　　　s//*Jack E. Truitt*
JACK E. TRUITT, BAR NO. 18476, T.A.
149 North New Hampshire Street
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com
Counsel for FFE Transportation Services, Inc. and Robert F. Bird

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been duly served on all counsel of record by depositing same into the U.S. Mail, postage pre-paid, and/or by hand and/or by facsimile and/or by electronic means on August 15, 2016.


　　　s//*Jack E. Truitt*